### RODRIGUEZ v. SAEGERT, Sheriff, et al.
### No. 9234.

Court of Civil Appeals of Texas. San Antonio.

March 14, 1934.

Rehearing Granted May 9, 1934.
Rehearing Overruled Aug. 20, 1934.

Dibrell, Mosheim & Campbell, of Seguin, for appellant.

O. E. Threlkeld, of Seguin, and John C. Hoyo, of San Antonio, for appellees.

SMITH, Justice.

The appeal presents the one question of whether the small plot of ground involved is exempt from execution as the homestead of appellant and his family.

In 1922 appellant purchased and paid for the property, consisting of four unimproved city lots situated just outside the corporate limits of the city of Seguin. He has never owned any other real estate.

Appellant was then and is yet a tenant farmer, but purchased the property for the

purpose of making it his family homestead as and when he could build a dwelling thereon. With this intention he forthwith put a fence around the property, and put it in cultivation, working it himself for the ensuing two years while carrying on his farming operations "on halves" on nearby farms. He then rented the property to another for the next two years, but, as he was getting no revenues from that source, did not again let the premises. Thereupon, in 1924 or 1925, he undertook to build his dwelling thereon, but his negotiations for lumber and material were fruitless, as the lumber company demanded a lien upon the lots and appellant's wife refused her consent thereto. Illness in his family followed, the family grew from two children to six, the "years" were "awful hard," so that, when appellant's property was levied upon in 1931, he had made no further progress towards actual occupancy of the place as a home, and has since moved into an adjoining county, where he is still farming "on halves."

It was developed upon the trial that appellant bought a truck in 1924, for which he paid $890 cash. He bought a Chevrolet touring car in 1925, for which he paid part cash, but apparently had to surrender it, or at least he no longer has it. In 1932 he bought a Ford with $25 which his brother-in-law had advanced to him with which to provide a means of transporting his children to and from school. Appellant further testified: "I was still claiming this as my homestead on or about September 25, 1931. At that time I sold a little strip to the State Highway Department for a road. Possibly they paid me about $92.00. I did not tell the man it was my homestead and my wife would have to sign the deed. The man, when he bought that strip of property, asked me if my wife consented to it. My wife was not present, and I went home and talked to my wife and told my wife how the thing was, that it was necessary to sell this piece of land for the highway, for the benefit of the highway, and my wife, when I told her that, said 'If it is necessary, I agree with you to sell it.' My wife did not sign the deed."

Appellant swore that he bought the place with the intention of making it his homestead, that through all the intervening trials and vicissitudes he has clung to and still maintains that intention; that only his inability so far to finance it has prevented him from building and occupying a dwelling thereon; and that he still intends to so improve and occupy the place when he becomes able to do so.

We have endeavored to fairly state the testimony in the case, which was not controverted; appellant being the only witness as to the facts. Upon that testimony the trial court found against appellant's claim of the homestead exemption.

We are unable to escape the conviction that the evidence upon its face conclusively establishes appellant's claim to the homestead exemption, in that the testimony shows, indubitably, that, coupled with his avowed intention, appellant's acts in purchasing the place and fencing and cultivating it and afterwards endeavoring, though unsuccessfully, to build a home thereon, were such as to give it the character of a homestead, and that appellee did not meet the burden, thereupon shifted to him, of showing a subsequent abandonment of the homestead rights thus established. 22 Tex. Jur. pp. 81, 82, §§ 53, 54.

It is now the settled law of the state that actual occupancy, or construction of a dwelling, is not essential to give the character of a homestead to premises claimed under the constitutional exemption. To impress that character upon the premises claimed, it is sufficient to show a present intention to occupy in the future, coupled with acts of preparation looking to actual occupancy. 22 Tex. Jur. pp. 59, 60, §§ 36, 37.

"Thus by preparation for occupancy or the construction of improvements, accompanied by an intention to occupy premises as a home, the homestead exemption may be impressed upon unoccupied premises or unimproved property. 'A definite intention, in good faith, to occupy vacant property as a homestead by the head of a family who owns no other home is of controlling force when such intention is accompanied by preparatory acts in connection with the property definitely tending of themselves to show such intention and the good faith and reality thereof.'" Id. § 37.

It was well said by Justice Brown in Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 1035, 34 Am. St. Rep. 832: "From these decisions it is apparent that intention is almost the only thing that may not be dispensed with in some state of case, and it follows that this intention in good faith to occupy is the prime factor in securing the benefits of the exemption. Preparation—that is, such acts as manifest this intention—is but the corroborating witness to the declaration of intention, the safeguards against fraud, and an assurance of the bona fides of the declared intention of the party. If a homestead cannot be acquired until it is occupied, then no one can acquire a homestead exempted from forced sale unless he

buys an improved place; and then he must have a race with the sheriff for possession. The unimproved lands of the country and the vacant lots of our cities cannot be acquired for the purpose of making a home by the man who is indebted except at the risk of turning it over to a creditor. If a man owes nothing, or is able to pay all that he owes, he does not need the exemption. If he has other property, he can protect his home by pointing out that other property for sale; but if he has nothing but the homestead, he comes within the necessity of the constitutional provision, and to him is the chief value of exemption."

We are not unmindful of the fact that the court below is the trier of the facts, or of the presumptions in favor of that court's findings upon the case. But here the testimony was all one way, albeit it came from appellant's lips alone. And while it is of course true that it was the province of the trial judge to appraise the credibility of the witness and weigh his testimony, yet we cannot say the trial judge could ignore that testimony in toto and give effect to deductions and findings without support of any evidence or circumstances. The controlling facts testified to by appellant were such as could easily have been rebutted, if not true. The record evidence showed appellant purchased and paid for the land, which cannot be gainsaid. Appellant testified that he forthwith went into possession and fenced the land; that he cultivated it for two years and rented it out for a year or so; that he endeavored to build a home thereon, but could not meet the exactions of the lumber company with which he negotiated. All this testimony could have been easily rebutted, if not true, but appellee made no attempt to refute it, and was content to rest upon its claimed insufficiency in law. We conclude that in this situation the trial judge could not ignore this, the only, evidence in the case, and render judgment on the law, as if all the evidence was untrue.

This court is not satisfied to hold as a matter of law, as the trial court did, that appellant is not entitled to the claimed exemption. Accordingly, the judgment will be reversed and the cause remanded for another trial.

MURRAY, Justice.

I find myself unable to concur in the above opinion.

As stated in the opinion, all of the evidence offered in support of the issue of homestead came from appellant. As I construe the testimony, appellant did not testify that he fenced and cultivated this land in furtherance of his intention to make these lots his homestead. The evidence on this point is as follows:

"Q. * * * And you say you bought it for a home. What did you do after you bought it? ("It" referring to the lots in question.) A. I went and fenced it up and planted something in there, and then I rented it to a negro woman, and after a while I rented it to another negro, which he didn't pay me the rent, and then I haven't done anything more.

"Q. The first two years you planted (to the interpreter). Didn't he say the first two years he planted, one year corn and one year cane? A. Yes, sir, the first two years I planted—one year corn, and the next year cane. * * *

"Q. What kind of fence did you put around it? A. I used some mesquite posts and barb wire fence, and now the fence is down and I haven't been able to replace it. * * *

"The Court (to the interpreter): What did he say?

"Interpreter: He said there was a fence on two sides, and they had a trail through there, and when he bought it he had to fence the other two sides to plant some corn.

"The Court: Fenced it up so he could plant corn?

"Interpreter: Yes Sir."

The above is all of the material testimony showing anything done to the land itself that might be construed as evidencing appellant's intention to occupy the same as a homestead.

 The evidence is clear that appellant bought and paid for the land, that he intended to make it his home, but mere intention alone is insufficient, the intention must be evidenced by some unmistakable acts showing an intention to carry out the design. 22 Tex. Jur. p. 58, § 35. It occurs to me that placing a barbed wire fence around lots and planting corn one year and cane another year are not unmistakable acts showing a design to make such lots a homestead.

This land was purchased in 1922, the trial was in 1933, and the above acts are all of the improvements or uses of these lots claimed by appellant which could in any way evidence his intention to carry out his desire to occupy these premises as his home.

Certainly such evidence is not conclusive, and, placed in the most favorable light, could only raise the issue of homestead vel non, which the judge below as the trier of facts

was called upon to weigh and consider, and his conclusions drawn therefrom are binding on this court.

■ There is another reason why the judgment of the trial court should not, in my opinion, be disturbed by this court: All of the testimony comes from appellant himself, who is an interested party; therefore it became the trial judge's duty to pass upon his credibility and the weight to be given to his testimony, and under such circumstances an issue of fact is raised which must be passed upon alone by the trier of facts in the court below. There are a number of recent decisions to this effect: Himes v. Himes (Tex. Civ. App.) 55 S.W.(2d) 181, 186; Stone v. City of Wylie (Tex. Com. App.) 34 S.W.(2d) 842, 845; Krueger v. Bankers Lloyds (Tex. Civ. App.) 45 S.W.(2d) 363; Wade v. Bank (Tex. Civ. App.) 263 S. W. 654.

In the Stone Case the court said: "But, if it be conceded that the pleadings are sufficient in this respect, there is no evidence raising such an issue except that given by defendant in error. He being an interested party, his testimony, though not controverted, could do no more than raise the issue for the determination of the jury."

In the Himes Case the court said: "Moreover, the only testimony in the record offered in support of defendant's plea of homestead is that of defendant himself and wife, and both are evidently highly interested witnesses. It has been held frequently that the testimony of interested witnesses, even though uncontradicted, only raises an issue of fact for the jury."

For the reasons above set out I respectfully dissent.

### On Motion for Rehearing.

SMITH, Justice.

On rehearing a majority of the court have concluded that the judgment should be affirmed, in accordance with the dissenting opinion of Justice MURRAY, and it will be so ordered. The writer adheres to his original opinion.

Appellees' motion for rehearing is granted and the judgment affirmed.

### On Further Motion for Rehearing.

BICKETT, Chief Justice.

■ A majority of the court is of the opinion that the property involved in this suit was not the homestead of appellant. Parker v. Cook, 57 Tex. Civ. App. 234, 122 S. W. 419; Cobb v. Collins, 51 Tex. Civ. App. 63, 111 S. W. 760; Guaranty State Bank v. Banks (Tex. Civ. App.) 56 S.W.(2d) 1102. The judgment of the district court should therefore be affirmed.

Appellant's motion for rehearing is overruled, and the judgment affirmed.